UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| KAYLA PAUL LINDSEY, ) | |
| ) | |
| Plaintiff/Petitioner, ) | |
| ) | Docket No.: <u>3:15CR00017TSL-FKB-1</u> |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | MEMORANDUM OF POINTS AND AUTHORITIES |
| ) | PURSUANT TO: 28 U.S.C.S. §1651(a) |
| Individually and in Official Capacity ) | WRIT OF ERROR CORAM NOBIS/WRIT OF |
| David H. Fulcher; Assistant U.S. Attorney ) | HABEAS CORPUS AUDITA QUERELA TO |
| Individually and in Official Capacity ) | <u>COMPLEMENT THE REMEDY</u> <u>OF 28 U.S.C.</u> |
| John Colette; Defense Counsel ) | <u>§2255</u> & ARTICLE 1, §9, CL 2, OF THE |
| ) | CONSTITUTION OF THE UNITED STATES |
| Defendants ) | |
| ) | |
| ) | |

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUL -9 2018
ARTHUR JOHNSTON
BY_____ DEPUTY

Habeas Corpus Common Law Writ pursuant to the Writ of Error Coram Nobis/Audita Querla 28 U.S.C. §1651(a) to complement the remedy of the Writ of Habeas Corpus pursuant to 28 U.S.C. §2255.

COMES NOW, Kayla Paul Lindsey, herein after Plaintiff/Petitioner, seeks review of these matters involving the indictment, plea agreement, conviction, sentence and judgment. She questions the legality of said indictment, conviction and wishes to raise these grounds in violation of Due Process Rights.

## INTERESTED PARTIES

United States Assistant Attorney
David H. Fulcher
501 East Court Street, Suite 4.430
Jackson, MS 39201

Defense Counsel
John Colette
501 S. State Street
Jackson, MS 39201

Immigration Attorney
Gwendolyn Smith Law Firm
997 S. McPherson Church Road, Suite 202
Fayetteville, NC 28303

## ISSUES PRESENTED

**GROUND ONE:**

Ineffective Assistance of Counsel Sixth and Fourteenth Amendment Right Violations

Counsel was ineffective for his failure to affirmatively represent the adverse immigration consequences of Petitioner's conviction.

Counsel was ineffective for his affirmative misrepresentations regarding immigration consequences of Petitioner's guilty plea and conviction.

**GROUND TWO:**

Ineffective Assistance of Counsel Sixth and Fourteenth Amendment Right Violations

Deportation is the direct consequence of the guilty plea arranged by counsel making Counsel ineffective.

**GROUND THREE:**

Due Process Clause/Conspiracy Vagueness

5th Amendment Violation (Fifth)

14th Amendment Violation (Fourteenth)

Petitioner seeks review of indictment for Conspiracy to Defraud the United States in violation of 18 U.S.C. §371 by the United States District Court for the Southern District of Mississippi, there must be an agreement or some common plan/scheme. The Defendants never provided qualifications as to the nature of the fraud that is insufficient to support a conspiracy conviction.

## STATEMENT OF FACTS

On April 7, 2015, Lindsey (thereinafter Plaintiff/Petitioner) was charged with seventeen (17) counts of Conspiracy to Defraud the United States, Plaintiff/Petitioner pleaded guilty pursuant to a plea agreement to one (1) count of conspiracy and was sentenced to six (6) months imprisonment, three years supervised release and a special assessment of $100. Plaintiff/Petitioner is a Bahamian citizen but has been a Legal Permanent Resident of the United States since 1997.

Prior to pleading guilty, Plaintiff/Petitioner alleges that she consulted with her attorneys and specifically asked them whether a guilty plea would affect her immigration status. The first attorney (Brad Clanton) she entrusted her affairs with did absolutely nothing on her case for a period of five (5) to seven (7) months. She terminated his services. As time was against her, she paid an exuberant amount of fees to Defense Attorney Colette who expressed he only had a short window to either take her case to trial or for her to take a plea. Both Attorneys were asked specifically by Plaintiff/Petitioner if a plea agreement had any effect on her Legal Permanent Resident status and she was assured that she would not face any adverse immigration consequences. On Page Eleven (11) of the Sentencing Memorandum, Judge Tom S. Lee was reading instructions about deportation possibility, however, at that point, due to the fact that Petitioner's had secured a Plea Agreement, Petitioner's attorney had already confirmed/guaranteed that there would not be a deportation. So Petitioner did not even pay attention to the Judge's instructions.

On February 9, 2018, after serving approximately five (5) months in Aliceville, Federal Correctional Institution, Plaintiff/Petitioner was released from prison but detained by Immigration Customs & Enforcement and arrived at the LaSalle Detention Center on February 12, 2018.

Plaintiff/Petitioner seeks to withdraw guilty plea and support her petition with two (2) claims of Ineffective Assistance of Counsel ("IAC") alleging that Defense Counsel affirmatively misrepresented the adverse immigration consequences of her conviction. Plaintiff/Petitioner claims that, had she known

the true nature of the immigration consequences of the potential conviction, she would have requested a different plea deal or gone to trial.

Therefore, the Plaintiff/Petitioner files this Common Law Writ of Habeas Corpus Audita Querela/Coram Nobis pursuant to 28 U.S.C. 651(a) to withdraw the plea and dismiss the indictment.

## ARGUMENTAL SUMMARY

Plaintiff/Petitioner intends to prove that the defense attorney's performance was ineffective because it fell below the standards of prudent counsel throughout the course of these proceedings.

Defense Counsel failed to advice and misadvised Plaintiff/Petitioner of immigration consequences, counsel affirmatively misled Petitioner into believing that she would not face any adverse immigration consequences of her plea agreement.

There are smorgasbords of legal and factual errors in the Plaintiff/Petitioner's case. The Plaintiff/Petitioner has presented such claims upon which she believes are most relevant, and those when addressed cumulatively would create ta substantial prejudice, and gross miscarriage of justice.

Therefore, the Court should allow Petitioner to withdraw her guilty plea, because the advice involved an affirmative misrepresentation which violates Petitioner's Sixth Amendment.

Petitioner seeks motion to dismiss the indictment and motion to set aside the judgment/sentence. The Petitioner was indicted improperly for conspiracy to defraud the United States because she never agreed with her co-defendant as to the type of fraud.

## LEGAL ARGUMENT

**GROUND ONE:**

Ineffective Assistance of Counsel renders this guilty plea involuntary, and hence invalid. <u>Ventura v. Meachum, 957 F.2d 1048, 1058</u>.

Petitioner has been released from prison but tardiness is irrelevant were constitutional issue is raised. See <u>McKinney v. United States 208F.2d 846, 847</u>.

In <u>Heflin v. United States 358 U.S. 415 (1959)</u>, the concurring opinion noted: The statute ... provides; "A motion ... simply means that, as in Habeas Corpus, there is no statute of limitations, no resjudicata, and that the doctrine of laches is inapplicable 358 U.S. at 420.

An "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by that plea because a plea of guilty is valid only if made intelligently and voluntarily. "<u>United States v. George, 869 F.2d 333, 335-36 (7th Cir. 1989); Downs-Morgan v. United States, 765 F.2d 1534, 1538 (11th Cir. 1985)</u>."

Ineffective Assistance of Counsel. (1957) "A representation in which the defendant is deprived of a fair trial because the lawyer handles the case unreasonably, usu. Either by performing incompetently or by not devoting full effort to the defendant." Black's Law Dictionary. Counsel's representation fell below an objective standard of reasonableness. See Hernandez, 242 F.3d at 112, Defense Attorney misadvised Petitioner about the consequences of the Plea Agreement and affirmatively misled Petitioner into believing that she would not face any adverse immigration consequences.

In United States v. Chan, No. 14-55239 (9th Cir. 2015), the Court held that a woman was misinformed more than twenty (20) years ago about the immigration consequences of a guilty plea can withdraw her plea because the advice involved an affirmative misrepresentation that has always been wrong, not a mere oversight to violate the Sixth Amendment. See also Kovace v. United States, 744 F.3 44 (2d Cir. 2014) (Petitioner established Sixth Amendment claim of ineffective assistance of counsel because counsel misadvised him as to immigration consequences of his plea.

Immigration consequences may have been enough to have allowed Petitioner to negotiate a more favorable plea agreement with the government or go to trial. See Sasonov v. v. United States, 575 F. Supp.2d 626, 639 (D.N.J. 2006); Hernandez v. United States, 778 F.3d 1230 (11 Cir. 2015). Petitioner would have insisted on going to trial or negotiating a more favorable plea agreement with the government. She agreed to the plea agreement because Defense Counsel assured her that she would not have any adverse immigration consequences. On Page Eleven (11) of the Sentencing Memorandum, Judge Tom S. Lee was reading instructions about deportation possibility, however, at that point, due to the fact that Petitioner's had secured a Plea Agreement, Petitioner's attorney had already confirmed/guaranteed that there would not be a deportation. So Petitioner did not even pay attention to the Judge's instructions.

On February 9, 2018, after serving about five (5) months at Federal Correctional Institution ("FCI") Aliceville, Petitioner was released from prison but detained by Immigration Customs & Enforcement ("ICE"), and transported to LaSalle Detention Center in Jena, Louisiana on February 12, 2018.

On April 19, 2018, Immigration Judge Madeline Garcia ordered Petitioner deported. See Immigration Court Doc. Exhibit A.

An attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness. But counsel affirmative misrepresentations on the subject constitute ineffective assistance. See, e.g., id. United States v. Santelises, 476 F.2d 787, 789-90 (2d Cir. 1973). Wherein, a client is an alien, counsel has the obligation

of advising the client of his or her particular position as a consequence to his or her guilty plea. See Michel v. United States, 507 F .2d 461, 465 (2d Cir 1974). Moreover, recent Supreme Court authority supports attorney responsibility as well. See e.g., INS v. St Cyr, 533 U.S. 289 323 n.50, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001). Competent defense counsel should follow the advice of numerous practice guides, should advise their clients concerning the provision's importance." (Emphasis added) (citing Amicus Br. For Nat'l Assoc. Criminal Defense Lawyers et al. at 6-8)); id. At 322 n.48 (noting that "the America Bar Association's Standards for Criminal Justice provide that, if a defendant will face deportation as a result of conviction, defense counsel' should fully advise the defendant of these consequences'" (citing ABA Standards for Criminal Justice, 14-3.2 comment, 75 (2d ed. 1982))). Affirmative Misrepresentation by Counsel as to the deportation consequences of a guilty plea meets the first prong of the Strickland test.

**GROUND TWO:**

Deportation as a Direct Consequence of the Guilty Plea

Because of the 1990 and 1996 Amendments to the Immigration and Nationality Act, deportation is a virtually certain consequence for an alien convicted of an aggravated felony, the court's failure, before accepting her plea, to inform her of that consequence violates Fed. R. Crim. P 11(c)(1).

In United States v. Livorsi, 180 F .3d 76, (2d Cir. 1999)(quoting United States v. Lora, 895 F .2d 878, 880 (2d Cir. 1990), and we therefore "examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights has been compromised.'" Livorsi, 180 F .3d at 78 (quoting Maher, 108 F .3d at 1520). That Court has adopted a standard of strict adherence to Rule 11, therefore, the Court is protecting defendant's substantial rights.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. :. No. 104-132, 110 Stat.1214, and the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), Pub. L. No 104-208, 110 Stat. 3009-546, further amended the Immigration and Nationality Act to

eliminate the Attorney General's authority to grant a waiver to deportation. As a result, "no alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion." 8 U.S.C. §1228(b)(5).

As a result of these amendments, an alien convicted of an aggravated felony is automatically (311 F .3d 190) subject to removal and no one – not even the Judge, the INS, nor even the United States Attorney General has the discretion to stop the deportation. Therefore, deportation is an essentially certain, automatic, and unavoidable consequence of an alien's conviction for an aggravated felony.

Recently, the Court of Appeals held that the Padilla standard applies retroactively to all pleas/conviction entered after the effective date of the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Denisyuk v. State, 422 Md. 462 (2011).

"Defense Counsel neglected to inform Defendant of the necessity or informing his Consulate of his legal issues. The United States Court of Appeals for the Seventh Circuit has explained the utility of Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36(1) (b), 21 U.S.T. 77, 596 U.N.T.S. 261. In cases where foreign nationals are being detained: Article 36 furthers an essential consular function: protecting the interests of the sending state and of its nationals, Vienna Convention on Consular Relations, Apr. 24, 1963, art.5(a),(e), 21 U.S.T. 77,596 U.N.T.S. 261. This "protection function" is one of the most important function performed by a Consulate. Foreign nationals who are detained within the United States find themselves in a very vulnerable position. Separated from their families and far from their homelands, they suddenly find themselves swept into a foreign legal system. Language barriers, cultural barriers, lack of resources, isolation and unfamiliarity with local law create an aura of chaos around the foreign detainees, which can lead them to make serious legal missteps. See Osagiede v. United States, 543 F. 3d 399, 411 (7th Cir. 2008)."

In Padilla v. Kentucky, dealing with advice about the effects of a guilty plea on immigration status, the Supreme Court analyzed where counsel representation fell below an objective standard of

reasonableness. The Court discussed that if the law is not succinct and straightforward on a topic; a criminal defense attorney does not need to do more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequences is truly clear, such as exile from this country and separation from ones family, the duty to give correct advise is equally clear. In this case, it was the duty of Counsel to provide his client with available advice about an issue like deportation, and the failure to do so clearly satisfied the first prong of the *Strickland analysis*. In fact, the Court went on to suppose that Counsel might have been able to plea bargain creatively with the Prosecutor and come up with a scenario that reduced the likelihood of deportation. The Ninth Circuit has further clarified that a defendant who, like the Defendant, "faces almost certain deportation" as a result of a conviction for an aggravated felony, "is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is virtual certainty." United States v. Bonilla, 637 F .3d 980,984 (9th Cir. 2011).

**GROUND THREE:**

Due Process/Fraud Vagueness Clause:

A Conspiracy to Defraud the United States in violation of 18 U.S.C. §371 by the United States District Court must be an Agreement on some common plan/scheme. The Government never provided qualifications as to the nature of the fraud that is insufficient to support a conspiracy conviction.

The law of conspiracy requires Agreement as to the "object" of the conspiracy.

Lack of an Agreement:

A conspiracy is an "Agreement among the conspirators." See United States v. Falcone, 311 U.S. 205, 210, 85 L. Ed. 128, 615 204 (1940). A "meeting of minds" is required says "Krulewitch v. United States, 336, U.S. 440, 448, 93 L. Ed. 790, 69 S. Ct. 716 (1949). Justice Jackson, J., concurring "unless at least two people commit" [the act of agreeing] no one does."

A general Agreement to engage in unspecified criminal conduct is insufficient to identify the essential nature of the conspiracy plan.

The law of conspiracy demands that there is an Agreement as to the "object" of the conspiracy. "Essential nature of the plan" must be shown. See <u>Blumenthal v. United States, 332 U.S. 539, 557, 92 L. Ed. 154, 68, S. Ct. 248 (1947)</u>.

The Defendants/Government must have proof of the essential of the plan is required because "the gist of the offense remains the Agreement, and it is therefore essential to determine what kind of Agreement or understanding existed as to each defendant." <u>United States v. Borelli, 336 F .2d 376, 384 (2d Cir. 1964)</u>.

"Agreement is the essential evil at which the crime of Conspiracy is directed" and it "remains the essential element of the crime." <u>Iannelli v. United States, 420 U.S. 770, 777 n. 10, 43 L. Ed .2d 616, 95 S. Ct. 1284 (1975)</u>. "Nobody is liable in conspiracy except for the fair import of the concerted purpose or Agreement as he understands it." <u>United States v. Peoni, 100 F .2d 401, 403 (2d Cir. 1938)</u>. A conspirator's liability for substantive crimes committed by his co-conspirators depends on whether the crimes were committed "in furtherance of the unlawful Agreement or conspiracy." <u>Pinkerton v. United States, 328 U.S. 640, 645, 90 L. Ed. 1489, 66 S. Ct. 1180 (1946)</u>.

<u>Conspiracy/Fraud Vagueness Clause:</u>

Fifth and First Amendment Right Violations

Under general rule of Conspiracy, Petitioner could not have been validly convicted of conspiracy, because she had no knowledge or Agreement of any such plan among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy; and the persons having no knowledge of the conspiracy are not conspirators.

"An individual defendant's membership in a conspiracy may not be established simply by his presence at the scene of a crime, nor by the fact he knows that a crime is being committed." United States v. Desimore, 119 F .3d 217, 223 (2d Cir. 1997). Similarly, mere association with individuals involved in unlawful acts is insufficient to establish knowing involvement in a conspiracy. United States v. Hawkins, 547 F .3d 66, 71 (2d Cir. 2008); United States v. Gaviria, 740 F .2d 174, 184 (2d Cir. 1984).

"The seller of goods in themselves is not a conspirator with nor abettor of the buyer because he knows that the buyer means to use the goods to commit a crime." United States v. Salvatore Falcone 85 L. Ed. 128.

Mere co-operation without an understanding may not make a conspiracy. There has to be an unlawful Agreement for the crime of conspiracy to be a conspiracy." "Conspiracy " exists whenever there is a combination, Agreement or understanding, tactic or otherwise, between two or more persons for the purpose of committing unlawful acts. Petitbone v. United States, 148 U.S. 197, 37 L. Ed. 419, 13 S. Ct. 542; Gebardi v. United States, 287 U.S. 112, 777 L. Ed. 206, 53 S. Ct. 35, 84 ALR 370.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving a person of liberty under a statute "so vague that it fails to give ordinary people fair notice … or so standardless that it invites arbitrary enforcement." Purportedly rooted in "Due Process of Law" to achieve its own policy goals, substantive Due Process being the poster child. See McDonald v. Chicago, 5614 U.S. 742, 811 (2010).

"A statute can be impermissibly vague … if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits "or" if it authorizes or even encourages arbitrary and discriminatory enforcement." Justice Washington in Hill v. Colorado, 530 U.S. 703, 732 (2000).

The language of these acts is so broad that one who writes a letter or makes a speech or publishes an article or distributes literature or does many of other things which appellees are charged has no fair

notice when he is close to the prohibited line. No construction we give it today will make it clear retroactively the vague standards that confronted the Appellees when they did the acts now charged against them as criminals. Cf <u>Pierce v. United States, 314, U.S. 306, 311, 86 L. Ed 226</u>.

"Since the Act touches on exercise of First Amendment Rights, and is not narrowly drawn to meet precise evils, its vagueness has some of continuous and effective restraint." Justice Warren. Such is the case of the <u>Conspiracy Clause</u>. Anytime there is ambiguity in an Appellee, especially when questions of Constitutional Rights have been raised, we must ascertain that such person(s) are not being subjected to violation of Amendment Rights.

In retrospect, Due Process mandates that all factors should be soluble and transparent when someone's liberty is under a statute. When there is an interpretation doubtful, as to liberty, the decision must be in favor of liberty. Unfortunate individuals, like Plaintiff, who have been convicted under the Conspiracy Clause, must be vacated because the Fifth Amendment's Due Process Clause prohibits the Government from depriving a person of liberty under a statute like the Conspiracy Statute "so vague that it fails to give ordinary people fair notice… or so standardless that it invites arbitrary enforcement."

The potential for abuse in allowing the Government and Judge to manipulate the Court by easy access to conspiracy and vagueness Clause to get their convictions. They choose broader statutes like "Conspiracy", "fraud" that are less defined.

CONCLUSION

It is certain and automatic that deportation is without doubt, once an alien is convicted of an aggravated felony. This is a "significant effect" of which the accused should be informed, so that the accused can make an intelligent choice as what is better for her. Rule 11 must be read to require that the Court ascertain, before accepting the accused plea, that the defendant is certain, and unquestionably significant, consequence of an alien's conviction for an aggravated felony. Because, the Plaintiff's

Counsel affirmative misrepresentation about the deportation consequences of her guilty plea fell below an objective standard of reasonableness and if Petitioner had understood the deportation consequences of that guilty plea, Petitioner would have never plead guilty; she would insisted on going to trial. If Ms. Lindsey thought for even a second that, she was going to be deported, she would never, ever agreed nonetheless signed that Plea Agreement. Ms. Lindsey, the Petitioner, was affirmatively misled by Counsel into believing that she would not get deported because her sentence is less than a year.

Petitioner would not have pleaded guilty if she understood the deportation consequences of that guilty plea. Petitioner's plea was rendered involuntarily by her Counsel's ineffective assistance.

"It is an elementary principle of criminal pleading, that where the definition of an offense, whether it be at Common Law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, it must descend to particulars." <u>United States of America v. Elyakim G. Rosenblatt 554 F .2d 36; 1977 U.S.</u>.

As Justice Gorsuch puts it in Sessions v. Demaya, "consider first the doctrine's of due process underpinnings. The Fifth and Fourteenth Amendments guarantee that life, liberty or property "may not be taken" without due process of law." That means the Government generally may not deprive a person of those rights without affording him the benefit of (at least) those "customary procedures to which free-men were entitled by the old law of England."

## RELIEF SOUGHT

**WHEREFORE**, Petitioner respectfully prays this Honorable Court would review her Writ of Habeas Corpus and uphold the law of the Constitution. Petitioner claims her rights have been violated, she demands that the Court dismiss the indictment, grant her motion to withdraw the guilty plea and set aside the judgment/sentence in the interest of justice.

Due to the time sensitive of this most private matter, under necessity, under §2243, Petitioner prays that the Court make a return of the Writ within thirty (30) days after being so ordered.

Kayla Paul Lindsey, Petitioner/Plaintiff under penalty of perjury, certify under penalty of perjury, under the laws of the United States of America that the aforementioned is true and complete to the best of her knowledge.

Dated: July 5, 2018

Respectfully Submitted,

*[signature]*

Kayla Paul Lindsey
Plaintiff/Petitioner

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

## PROOF OF SERVICE

I, Kayla Paul Lindsey, a living woman and non-fiction, hereby certify under penalty of perjury, under laws of the United States of America, that I am at least eighteen (18) years of age, and that I personally service the following document(s):

**WRIT OF ERROR CORAM NOBIS/ WRIT OF HABEAS CORPUS AUDITA QUERALA**

By placing one true correct copy of said document(s) in first class United States Mail Office, at LaSalle Detention Center, with potage prepaid and properly addressed to the following:

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
501 E. COURT STREET, STE. 2.500
JACKSON, MISSISSIPPI 39201

UNITED STATES ASSISTANT ATTORNEY
DAVID H. FULCHER
501 EAST COURT STREET, SUITE 4.430
JACKSON, MISSISSIPPI 39201

## UNSWORN DECLARATION OF PERJURY

I, Kayla Paul Lindsey, a living woman and non-fiction, under penalty of perjury, certify that the aforementioned is true to the best of my knowledge, and executed on this date: July 5, 2018, A.D.

So Served,

*Kayla Paul Lindsey* (signature)

Kayla Paul Lindsey.
Plaintiff/Petitioner