**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                             **CRIMINAL NO. 3:15-CR-00017 TSL FKB**

**KAYLA PAUL LINDSEY**

**RESPONSE OF THE UNITED STATES TO MOTION**
**TO SET ASIDE GUILTY PLEA**

The United States of America, by and through D. Michael Hurst, Jr., United States

Attorney for the Southern District of Mississippi, and David H. Fulcher, Assistant United States

Attorney, respectfully submits this response to the motion of defendant Kayla Paul Lindsey for a

writ of coram nobis and for other relief. The government submits that the Court should deny the

motion for the reasons set forth herein.

## I.     BACKGROUND

On March 30, 2017, defendant Kayla Paul Lindsey pled guilty to Count 1 of the

Indictment, charging her with conspiracy to defraud the government. Lindsey was represented at

the plea hearing by experienced counsel, John Colette. During the hearing, Lindsey pled guilty

pursuant to a written plea agreement in which she explicitly waived his right to appeal and seek

post-conviction relief. [Docket No. 59]. The Plea Agreement contains waivers, including a

waiver of the right to appeal the conviction and a waiver of the right to contest the conviction in

any post-conviction proceeding:

> ***9. Waivers.*** *Defendant, knowing and understanding all of the matters*
> *aforesaid, including the maximum possible penalty that could be imposed, and*
> *being advised of Defendant's rights to remain silent, to trial by jury, to subpoena*
> *witnesses on defendant's own behalf, to confront the witnesses against Defendant,*
> *and to appeal the conviction and sentence, in exchange for the U.S. Attorney*
> *entering into this plea agreement and accompanying plea supplement, hereby*

*expressly waives the following rights ( except that Defendant reserves the right to raise ineffective assistance of counsel claims):*

> *a.        the right to appeal the conviction and sentence imposed in this case, or the manner in which that sentence was imposed, on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever; and*

> *b.        **the right to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding,** including but not limited to a motion brought under Title 28, United States Code, Section 2255, and any type of proceeding claiming double jeopardy or excessive penalty as a result of any forfeiture ordered or to be ordered in this case, and*

Plea Agreement ¶ 9 [Dkt. No. 59] (emphasis added).  The Plea Agreement fully informed

Lindsey as to the possible immigration consequences of her guilty plea:

> **4.        Immigration Status -** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigrations status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses and in some cases, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and **Defendant understands that no one, including Defendant's attorney or the Court, can predict to a certainty the effect of Defendant's conviction on Defendant's immigration status. Defendant nevertheless desires to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is automatic removal from the United States.**

Plea Agreement ¶ 4 [Dkt. No. 59] (emphasis added).  In seeking to obtain acceptance of

responsibility, Lindsey submitted the following statement admitting her guilt:

> *On or about February 2012-August 2012, I, Kayla Paul Lindsey, and Marlene Solomon Williams conspired to provide false statements to the Federal Home Loan of Dallas (FHLB) in order to participate or share in the money derived from FHLB. We accomplished this by creating a non-profit entity called Fiscal Integrity & Economic Development (FIED). During the years 2009-2011, FIED applied to receive FHLB Affordable Housing Grant money through Trustmark Bank located in Jackson, Mississippi. The purpose of these loans was to rehabilitate houses that belonged to low-income individuals.*

> *When FHLB denied the administrative fees as part of the application, I, Kayla Paul Lindsey, and Marlene Solomon Williams had the contractors increase the*

*estimates of the repairs to the homes by 20%. We then had the contractors to pay 10% to myself and 10% to Marlene Solomon for administrative fees.*

*On or about April 2, 2010, through approximately August 23, 2012, I, Kayla Paul Lindsey, and Marlene Solomon Williams submitted approximately 142 false invoices to the FHLB. These invoices were either altered by me or Ms. Williams to increase the contractor's estimate by 20% or they were inflated by the contractor by 20% at the request of me or Ms. Williams. During this time, the FHLB issued grant funds to the FIED's contractors totaling approximately $836,955.70. Of that money, me and Ms. Williams received approximately $163,467.40 of the grant funds.*

*I know what I did was wrong and I am deeply sorry for what I have done. I have let my family and friends down because my actions do not represent my character. I have learned from the embarrassment and humiliation this matter has caused me. I have learned a great lesson through all of this and promise to never do anything like this again. I take full responsibility for my actions and am truly sorry for the pain and suffering that I have caused my family and friends through my actions.*

*Thank you,*
*(signed) Kayla Paul Lindsey*
*Kayla Paul Lindsey*

Presentence Investigation Report, p. 9-10 [Dkt. No. 65]. Kayla Paul Lindsey was a Certified Public Accountant at the time of her crimes.

The Sentencing Guideline range for Lindsey called for a term of imprisonment of 12 to 18 months, and the government recommended a sentence within the lower 50% of the guideline range, consistent with its obligations under the Plea Agreement and Plea Supplement. The Court sentenced Lindsey to serve a term of six months in prison, followed by three years of supervised release. [Dkt. No. 74].

Despite having waived her right to contest her conviction and sentencing in any post-conviction proceeding, Lindsey now has moved for relief by seeking a "Writ of Error Coram Nobis/Audita Querla 28 U.S.C. § 1651(a) to complement the remedy of the Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2255."[1]   In this post-conviction proceeding attacking her

conviction, Linsey makes three claims:  First, she claims that her counsel was ineffective for

failing to affirmatively represent the adverse immigration consequences of her conviction.

Second, she claims that her counsel was ineffective because "Deportation is the direct

consequence of the guilty plea arranged by counsel." Finally, she claims that the facts do not

support her conspiracy conviction and therefore the indictment was impermissibly vague.  These

claims are without merit and should be dismissed.

## II.      LINDSEY CANNOT COLLATERALLY ATTACK HER CONVICTION THROUGH A POST-CONVICTION MOTION.

As part of her plea agreement, Lindsey agreed to forego her right to collaterally attack her

conviction and sentence.  Lindsey's voluntary decision to plead guilty served to waive all

nonjurisdictional defects. See *United States v. Hoctel*, 154 F.3d 506, 507 (5th Cir. 1998) ("As a

general rule, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the

proceedings against the defendant."). In addition to the general waiver resulting from a

defendant's unconditional guilty plea, a defendant also may explicitly agree to surrender her

right of to seek post-conviction relief as part of a plea agreement with the Government . *Id.* at

508. There is no basis to conclude that Lindsey's guilty plea was not knowingly and intelligently

made.

Lindsey waived her right to seek post-conviction relief.  The provision was clearly set

forth in Lindsey's Plea Agreement, which the defendant and her counsel signed.  The Plea

---

[1] "In 1954, the Supreme Court's decision in *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), revived the ancient writ of *coram nobis* by holding that the writ was available in federal courts pursuant to the All Writs Act, 28 U.S.C. § 1651(a). Since that time the writ has been used as an avenue of collateral attack when the petitioner has completed his sentence and is no longer 'in custody' for purposes of seeking relief under either 28 U.S.C. § 2241 or § 2255." *United States v. Dyer*, 136 F.3d 417, 422 (5th Cir.1998.

Agreement states that "Defendant ... hereby expressly waives ... the right to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255...." Plea Agreement, ¶ 9 [Dkt. No. 59]. This waiver encompasses any claim that the indictment was unconstitutionally vague or that the charge was unsupported by the facts. As was true of the defendant in *Hoctel*, Lindsey "can point to no evidence in the record that her explicit waiver, included in the written plea agreement and signed by [defendant] and her counsel, was not informed and voluntary." 154 F.3d at 508. See also *United States v. Burns*, 433 F.3d 442, 446 n.4 (5th Cir. 2005) (plea valid where court thoroughly complied with plea requirements). To the contrary, the language at the end of the Plea Agreement clearly states that she has read all of the provisions of the Plea Agreement, that she understands them, and that she agrees to them. Plea Agreement, p. 4 [Dkt. No. 59]. Accordingly, Lindsey has no basis to avoid her explicit waiver of the right to contest her conviction resulting from her guilty plea.

A collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more rigorous than even the plain error standard ... applied on direct appeal." *Gaudet*, 81 F.3d at 589. If the petitioner does not meet

either burden, she is procedurally barred from attacking her conviction or sentence.[2] *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).

"Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). "The...presentation of conclusory allegations unsupported by specifics is subject to summary dismissal...." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Lindsey waived her right to collaterally attack her conviction on any grounds other than ineffective assistance of counsel, and she is not entitled to relief on her claims that the charges were not valid. "[A]n informed and voluntary waiver of post-conviction relief is effective to bar to such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

## III.    LINDSEY WAS FULLY INFORMED OF THE POTENTIAL IMMIGRATION CONSEQUENCES PRIOR TO PLEADING GUILTY.

Lindsey claims that her counsel was constitutionally deficient because he failed to affirmatively represent the adverse immigration consequences of her conviction and because "Deportation is the direct consequence of the guilty plea arranged by counsel."  Both claims are without merit because Lindsey was fully informed of the potential immigration consequences of her guilty plea in the Plea Agreement prior to pleading guilty.  Plea Agreement, ¶ 4 [Dkt. No. 59], *supra.*

The Plea Agreement was tendered to her attorney on February 15, 2017, and on February 17, 2017, the Court entered a scheduling notice for a her change of plea hearing.  Both she and her counsel signed the Plea Agreement on March 10, 2017, as is reflected on that document, and

---

[2] This procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. See *Massaro v. United States*, 538 U.S. 500, 508 (2003).

she entered a guilty plea twenty days later on March 30, 2017.  Prior to pleading guilty, Lindsey

was fully informed as to the possible immigration consequences of pleading guilty in the Plea

Agreement, and she had plenty of time to change her mind prior to pleading guilty.  The Plea

Agreement included language that made it clear that the entry of a guilty plea could result in

removal from the country and that neither the District Judge nor her attorney could predict what

the immigration consequences of pleading guilty might be.  Nonetheless, she desired **"to plead**

**guilty regardless of any immigration consequences that this plea may entail, even if the**

**consequence is automatic removal from the United States."**  Plea Agreement, ¶ 4 [Dkt. No.

59].

In executing the Plea Agreement, Lindsey acknowledged that she understood and agreed

with the entire agreement, including the paragraph explaining that the entry of a guilty plea could

result in removal from the United States.  Just above the signature block is the following

language:

> **Defendant and Defendant's attorney of record declare that the terms of this plea agreement have been:**
>
> **1. READ BY OR TO DEFENDANT;**
> **2. EXPLAINED TO DEFENDANT BY DEFENDANT'S ATTORNEY;**
> **3. UNDERSTOOD BY DEFENDANT;**
> **4. VOLUNTARILY ACCEPTED BY DEFENDANT; and**
> **5. AGREED TO AND ACCEPTED BY DEFENDANT.**

In executing this document, Lindsey acknowledged that she had been informed that the result of

her guilty plea could be deportation and agreed to enter a plea of guilty, even after being

informed of the potential immigration consequences.  Her attorney also declared that the two of

them went over the terms of the Plea Agreement, including the provision informing her of

potential deportation.

An ineffective assistance of counsel claim in the context of a guilty plea is subject to the same standard as any other ineffective assistance claim; that is, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To successfully state a claim of ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced her defense. *Id.* at 687. The failure to establish either prong of the Strickland test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

The Supreme Court held in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) that the petitioner's attorney was ineffective in misadvising him about potential for deportation as consequence of his guilty plea, thus satisfying the first prong of *Strickland*. The Plea Agreement proves that Lindsey was informed of the potential immigration consequences of her guilty plea and that her counsel explained those consequences to her, as set forth in the Plea Agreement.

More recently, the Supreme Court held in *Lee v. United States*, 137 S.Ct. 1958, 1966, 198 L.Ed.2d 476 (2017) that in determining whether the defendant was prejudiced, the second prong under *Strickland,* the courts should conduct a case-by-case examination of the totality of the evidence in the context of a guilty plea by a defendant who would be subject to deportation. The Court declined to adopt an automatic rule denying prejudice claims when the defendant cannot mount a viable defense, but it warned against courts "upset[ting] a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1966-67. In the present case, Lindsey's expressed

preferences at the time of her guilty plea are found unequivocally in the Plea Agreement. Thus, Lindsey cannot satisfy the second prong of *Strickland*.

## CONCLUSION

For the foregoing reasons, Lindsey's motion for post-conviction relief should be denied.

Date:   August 7, 2018                                    Respectfully submitted,

                                                          D. MICHAEL HURST, JR.
                                                          *United States Attorney*
                                                          *Southern District of Mississippi*

                                          By:     */s/  Dave Fulcher*
                                                   David H. Fulcher, MSB No. 10179
                                                  *Assistant United States Attorney*
                                                   501 E. Court Street – Suite 4.430
                                                   Jackson, MS   39201
                                                   P:  601-973-2824
                                                   F:  601-965-4409
                                                   E-Mail:  dave.fulcher@usdoj.gov


## CERTIFICATE OF SERVICE

I, DAVID H. FULCHER, Assistant U.S. Attorney, hereby certify that I have this date electronically filed the foregoing motion with the Clerk of the Court using the ECF system which sent notification to all counsel of record.

Dated: August 7, 2018                                    */s/ Dave Fulcher*
                                                          David H. Fulcher
                                                          *Assistant United States Attorney*